IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DIMITRIOS LIAPIS,

                      Plaintiff,

    v.                                                      OPINION and ORDER

MARTIN O'MALLEY,[1]                                         23-cv-0063-jdp
Commissioner of Social Security,

                      Defendant.

---

Plaintiff Dimitrios Liapis seeks judicial review of a final decision of defendant Martin O'Malley, Commissioner of Social Security, finding that Liapis was not disabled within the meaning of the Social Security Act. Liapis argues that the commissioner's decision should be reversed and the case remanded because the administrative law judge (ALJ) erred in rejecting the opinion of Dr. Pushkash, a consulting psychologist who opined that Liapis would be "markedly limited" in his ability to concentrate and persist in the work environment because of pain and anxiety. The ALJ employed some faulty logic and took shortcuts with the evidence in explaining why he found Pushkash's opinion unpersuasive. But he said enough to show that he considered the evidence that tended to support Pushkash's opinion and he provided adequate reasons for discounting it. Further, the court is confident that the outcome would not be different on remand even if the court send the case back to the agency to patch up the holes. So it will affirm the commissioner's decision.

---

[1] The court has updated the caption to reflect Martin O'Malley's confirmation as commissioner. *See* Fed. R. Civ. P. 25(d).

BACKGROUND

Dimitrios Liapis is a veteran with past work history as a delivery driver, forklift driver, machine operator, and sales attendant. Liapis has chronic pain, mostly in his lower back and left foot. Liapis's left foot problems began when he shattered his ankle in 2004. Since that time, he has had multiple surgeries, including a full fusion of the left ankle in December 2021. As for his lower back, MRI scans show some abnormal discs, but Liapis's rehabilitation specialist opined that the pain was most likely being caused by myofascial pain and "chronic sensitization" rather than a disc problem. R. 530.[2] Liapis's pain treatment has included medications, physical therapy, chiropractic treatments, biofeedback, and sessions with a pain psychologist.

Liapis has also been diagnosed with bipolar disorder and anxiety. He takes medication prescribed by a psychiatrist and sees a licensed clinical social worker regularly for psychotherapy.

In July 2020, at the age of 46, Liapis applied for disability benefits, alleging that he had been unable to work since December 2019 because of his bipolar disorder and problems with his back, knees, and left foot. R. 255. In April 2021, at the request of the state disability agency, Liapis was evaluated by Mark Pushkash, Ph.D., a clinical psychologist. R. 389–92. Pushkash noted that Liapis walked slowly using a cane, and that he sat tensely and periodically shifted position, consistent with pain. Liapis was able to pay attention, and the results of Pushkash's mental status examination were largely unremarkable. Pushkash opined that Liapis had the ability to comprehend, recall, and follow through on instructions, and that he could

---

[2] Record cites are to the administrative transcript located at Dkt. 4.

appropriately relate to supervisors and coworkers so long as he took his psychotropic medication. But Pushkash thought that Liapis's ability to concentrate and persist on tasks would be "markedly impaired" because of pain and anxiety/depression, adding that Liapis was impaired primarily by his physical conditions. R. 391–92.

Dr. Robert Barthell, a psychologist hired by the state disability agency, reviewed Liapis's application on April 30, 2021; the materials he reviewed included the evaluation by Pushkash. Barthell agreed that Liapis would have limitations in maintaining pace and concentration because of pain and excessive worry, but he rated these limitations as "moderate." R. 102. In Barthell's opinion, Liapis remained capable of carrying out two-to-three step instructions on a consistent basis provided he had access to routine breaks. R. 102. In February 2022, a second state agency consultant offered generally the same opinion, concluding that Liapis retained the ability to carry out simple tasks over a routine workday and workweek in spite of his moderate concentration and persistence limitations. R. 115.

After the local disability agency denied his claim initially and on reconsideration, Liapis requested an administrative hearing. A telephonic hearing was held on June 2, 2022, before ALJ Patrick Berigan.

Most of Liapis's hearing testimony focused on his physical problems and his pain. He estimated that he could sit or stand for about 15 minutes before having to change position, and that he could lift no more than 25 pounds. R. 60–61. He said the more active he was, the more pain he had. With respect to mental problems, Liapis said that at times he lost his train of thought in the middle of a sentence, which in turn caused anxiety and associated chest pains. R. 62–63.

In a July 2022 decision, the ALJ found that Liapis was not disabled. R. 23–37. The ALJ found that Liapis had four impairments that were severe but not presumptively disabling: (1) degenerative disc disease of the lumbar spine; (2) degenerative joint disease of the left ankle; (3) bipolar disorder; and (4) anxiety. R. 26. The ALJ determined that in spite of these impairments, Liapis had the residual functional capacity (RFC) to perform work at the sedentary level of exertion (sitting up to six hours a day and standing or walking for a total of up to two hours a day, with the ability to lift ten pounds), with a number of postural limitations. Liapis does not challenge any of the ALJ's physical restrictions.

The ALJ also found that Liapis had the following mental limitations:

- He was limited to simple tasks requiring no more than two hours of continuous concentration;
- He required a low stress job, defined as one requiring only occasional decision making and occasional changes in the work setting;
- He could interact with the public occasionally; and
- He could interact with co-workers or supervisors occasionally.

R. 28.

In assessing Liapis's RFC, the ALJ considered Liapis's subjective complaints, reported activities, the objective medical evidence, and the medical opinions. The ALJ found that Liapis's subjective complaints concerning his physical limitations were not fully substantiated by the results of physical examinations, which showed that Liapis had normal strength, intact range of motion, negative straight leg raising, and was ambulatory under his own power. R. 31–32. Likewise, the ALJ found that the results of mental status evaluations undermined Liapis's allegation of disabling mental symptoms, noting that Liapis was repeatedly observed to be friendly, pleasant, clean, cooperative, alert and oriented, with intact insight, intact fund of

4

knowledge, normal thought content, good eye contact, normal affect, normal speech, normal concentration, and normal memory. R. 32. The ALJ also found that Liapis's mental health symptoms were managed with "relatively conservative treatment," singling out a March 2021 visit when Liapis told his mental health provider that he was "doing well overall." R. 32. Finally, the ALJ found that Liapis's daily activities suggested that Liapis was not as impaired as he alleged, noting that Liapis cared for his pets, prepared meals, did housework, did minor car and truck repairs, cleaned out his shop, drove, shopped, managed his money, handled his own medical care, and attended medical appointments. R. 32.

As for the medical opinions, the ALJ found the state agency psychological assessments "generally persuasive," finding that they were generally consistent with Liapis's "overall good" mental status examination findings and with evidence indicating that Liapis had "overall good symptom control with relatively conservative treatment."[3] R. 34. The ALJ determined that Dr. Pushkash's findings, on the other hand, were not persuasive, for the following three reasons: (1) Pushkash examined Liapis on only one occasion; (2) the doctor's opinion that Liapis had a marked impairment in his ability to concentrate and persist on tasks because of chronic pain "confabulate[d]" Liapis's mental limitations with his alleged physical issues, for which the ALJ found Dr. Pushkash had "no expertise;" and (3) the findings were inconsistent with the overall record, including Dr. Pushkash's own examination findings. R. 34–35.

---

[3] The ALJ also considered medical opinions concerning Liapis's physical limitations, crediting the opinions of the state agency physicians over a more restrictive opinion from a one-time examining physician, Kirsten Quinn, M.D. R. 32, 34. The ALJ found that Quinn appeared to base her opinion almost entirely on Liapis's subjective limitations, which the ALJ found were not supported by the record. R. 34. Liapis does not challenge the ALJ's evaluation of Quinn's opinion or his finding that Liapis's subjective complaints concerning his physical limitations were not fully credible.

Based on testimony from a vocational expert, the ALJ concluded that Liapis could not perform his past relevant work, but that he could perform other jobs available in significant numbers in the national economy, including as a nut sorter, lamp shade assembler, and bench assembler. R. 36. The Appeals Council denied Liapis's request for review, so the ALJ's decision became the final decision of the commissioner. R. 1.

Liapis now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## ANALYSIS

Liapis asserts a single claim on appeal: the ALJ erred in rejecting Dr. Pushkash's opinion that Liapis's ability to concentrate and persist on tasks in a work environment would be "markedly" impaired because of the interfering effects of chronic pain and anxiety/depression. He argues that reversal is required because the ALJ didn't apply the relevant evaluation criteria fairly, failed to adequately explain his conclusions, and mischaracterized or ignored evidence favorable to Liapis's claim.

Because Liapis filed his claim after March 27, 2017, the ALJ was required to evaluate Dr. Pushkash's opinion under the commissioner's updated regulation for evaluating medical opinions, 20 C.F.R. § 404.1520c (evaluating opinion evidence for claims filed after March 27,

6

2017). Under this regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 405.1520c(c). The ALJ must consider all of these factors, but he is required to explain only how he considered supportability and consistency. 20 C.F.R. § 404.1520c(b).

Citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014), Liapis argues that this court must apply a heightened standard of review—what he calls the "good explanation" standard—to the ALJ's explanation for rejecting Dr. Pushkash's opinion because Pushkash was the agency's own consulting examiner. Dkt. 12, at 8. But *Beardsley* was decided under the social security administration's old rules, which provided that the opinions of examining physicians were entitled to more weight than those of non-examining physicians. *See id*. (citing 20 C.F.R. § 404.1527(c) "Evaluating opinion evidence for claims filed before March 27, 2017."). The new rules eliminate that hierarchy. So *Beardsley*'s heightened level of scrutiny doesn't apply in this case. *Bryne v. Kijakazi*, No. 21-CV-53-jdp, 2023 WL 1100772, at *6 (W.D. Wis. Jan. 30, 2023); *Townsend v. Kijakazi*, No. 22-CV-165, 2023 WL 3022548, at *3 (E.D. Wis. Apr. 20, 2023) (holding same). The court will apply the ordinary degree of scrutiny and affirm the ALJ's decision if it is supported by substantial evidence.

The court now turns to the reasons cited by the ALJ for discounting Dr. Pushkash's opinion.

**A. Expertise and frequency of examination**

The first two reasons cited by the ALJ were illogical. First, the ALJ noted that Dr. Pushkash saw Liapis only once. R. 34. But he didn't apply this same criticism to the state agency psychologists, who didn't examine Liapis at all. Second, the ALJ suggested that it was improper for Pushkash to offer opinions about the extent to which Liapis's pain would interfere with his persistence and pace because the doctor had "no expertise" with respect to Liapis's physical problems. *Id*. By itself, this wouldn't justify discounting Pushkash's opinion: physical pain can be a source of mental limitation, and psychologists are competent to opine on those limitations. *Harmon v. Colvin*, No. 13-CV-686-jdp, 2015 WL 1399042, at *3 (W.D. Wis. Mar. 26, 2015)(citations omitted). But in the context of this case, it's even more problematic: Dr. Barthell, whose opinion the ALJ found *was* persuasive, also accounted for Liapis's pain when assessing his mental limitations. R. 102 ("The claimant has chronic pain that interferes with his ability to concentrate. The clmt also needs breaks which would interfere with his pace."). Perhaps the ALJ had a reason for employing this double standard, but he didn't provide one. Without a logical explanation for the inconsistency, the court finds that neither Pushkash's limited contact with Liapis nor the doctor's alleged lack of expertise in evaluating physical impairments was a sufficient reason for the ALJ to discount his opinion. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("[A]n internally inconsistent opinion by an ALJ is likely to fail to build a logical bridge between the evidence and the result.").

**B. Supportability and consistency**

Supportability and consistency are "[t]he most important factors" in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(a). In addition to the two reasons just discussed, the ALJ found the state agency psychologists' opinions to be more consistent with the objective medical evidence. Specifically, the ALJ found the state assessments to be generally consistent (and Dr. Pushkash's opinion inconsistent) with "the claimant's overall good mental status examination findings" and "the evidence demonstrating that the claimant has overall good symptom control with relatively conservative treatment." R. 34. So long as the evidence reasonably supports these conclusions, this court must uphold the ALJ.

**1. Objective evidence**

Liapis says reversal is required because the ALJ didn't adequately explain either of these conclusions, precluding informed review. He points out that the ALJ summarized the medical records only generally (e.g. "1F, 2F, 3F, 4F, 6F, 8F") instead of identifying specific pages in the record supporting his findings. Highly generalized summaries of the objective evidence without pinpoint citations are problematic: they make judicial review difficult and thus leave the ALJ's decision vulnerable to reversal for lack of a logical bridge. *See, e.g.*, *Contreras v. Saul*, No. 19-CV-669-jdp, 2020 WL 1873022, at *2 (W.D. Wis. Apr. 15, 2020) (reversing where "none of the ALJ's general summaries of the record or the specific records highlighted by the commissioner" were inconsistent with the claimant's testimony); *Fuchs v. Astrue*, 873 F. Supp. 3d 959, 971 (N.D. Ill. 2012). But in this case, the ALJ's discussion was sufficient. As the commissioner points out, the exhibits cited by the ALJ contain numerous mental status findings consistent with the ALJ's findings that: Liapis was observed to be "friendly, pleasant, clean, cooperative, alert and oriented" (R. 342, 346, 354, 358, 362, 366, 370, 374, 378, 381, 443,

488, 494, 502, 505, 517, 533, 564, 575, 732); he had normal concentration (R. 382, 505, 519, 534, 575, 594, 628, 740, 755, 768, 805, 881); he had normal memory or cognition (R. 382, 494, 502, 517, 519, 533, 534, 564, 575, 584, 589, 648, 732, 740); he had normal thought content (R. 488, 505, 575, 594, 670); he made good eye contact (R. 488, 505, 534); and he had a normal affect (R. 382, 488, 494, 502, 505, 517 533, 732). This includes Dr. Pushkash's own one-time evaluation of Liapis (Exhibit 3F), where he found Liapis had adequate eye contact, was oriented in all spheres, had normal social responsiveness, was able to pay attention with no signs of distractibility or other symptoms of ADHD, could recall six digits forward and four in reverse, could compute serial 7's to 50 without error, and had "unremarkable" results during cognitive testing. R. 390–91.

All of this evidence reasonably supports the ALJ's conclusion that Liapis had "overall good" mental status examination findings. Liapis doesn't really dispute this. Instead, he says that the commissioner's attempt to backfill the ALJ's decision violates the *Chenery* doctrine, which "generally confines a reviewing court to the agency's actual rationale for its decision, not an after-the-fact justification." *Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (citing *SEC v. Chenery*, 318 U.S. 80 (1943)). But the commissioner isn't proposing new grounds for the ALJ's decision; she is merely identifying specific pieces of evidence within the exhibits cited by the ALJ that correspond to the finding he already made. Further, unlike in *Contreras*, where the records cited post-hoc by the commissioner reinforced the legitimacy of the claimant's testimony (and undermined the ALJ's conclusion), 2020 WL 1873022 at *2, here all the records cited by the commissioner are consistent with the ALJ's conclusion that Liapis "retained relatively good mental functioning" despite his anxiety and bipolar disorder. R. 32. Given that an ALJ is not required to discuss every piece of evidence in the record, along with the

10

redundancy of the mental status findings, the court concludes that reversal is not required in this case because of the ALJ's failure to provide pinpoint citations.

Liapis says the normal mental status exams don't contradict Dr. Pushkash's opinion because Liapis's concentration was often noted to be "not formally assessed" and because none of the records specifically address persistence. Dkt. 12, at 13. But the ALJ didn't need to cite a specific medical record that directly contradicted Pushkash's opinion, particularly where Pushkash's own mental status findings failed to plainly support his opinions of marked limitations in concentration and persistence. It was Liapis's burden to support his claim of disabling limitations with objective evidence, not the other way around.

### 2. Treatment history

Liapis also criticizes the ALJ's finding that his anxiety and bipolar-related symptoms were "managed" with relatively conservative treatment. R. 32. In support of this finding, the ALJ again cited to an entire set of medical records (Exhibit 4F, consisting of 300 pages), singling out a note from March 2021 when Liapis told his mental health provider that he was "doing well overall." R. 662. Liapis accuses the ALJ of "cherry-picking," pointing out that in subsequent visits, Liapis was described as "mildly depressed and agitated" and self-medicating his pain with alcohol after his primary care provider abruptly discontinued his pain medications, R. 648, and having increasing agitation, anger, nervousness and stress in connection with his pending disability claim and lack of finances. R. 632, 627, 532, 591. But the ALJ's decision indicates that he considered these records. Specifically, the ALJ noted that during examinations, Liapis "has been observed to be depressed, stressed, disconcerted, agitated, frustrated and somewhat tense." R. 31. Although it's not a model of good decision-writing, the ALJ's summary is fairly accurate and shows that he did not ignore the evidence

11

that tended to support a finding of disability. The therapy notes cited by Liapis and mentioned summarily by the ALJ *could* be construed as consistent with a "marked" limitation in concentration and persistence, but the mere "presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). Overall, Liapis's mental health records presented a mixed picture of his functioning. This court cannot second-guess how the ALJ reconciled that evidence. *Bakke v. Kijakazi*, 62 F.4th 1061, 1070 (7th Cir. 2023) ("Where the ALJ clearly notes all evidence—that which supports his conclusion and that which undermines it—we cannot replace his judgment with ours.").

Liapis also says the ALJ mischaracterized the record when he described Liapis's treatment as "relatively conservative." He argues that treatment with psychotropic medications (Lithium and Seroquel) is by definition "non conservative," and he faults the ALJ for not specifying "what the next rung of the treatment ladder would be." Dkt. 12, at 12. But the record shows that Liapis has been taking these medications for many years (including when he was working) and they have been effective in managing his reported bipolar symptoms. As for Liapis's more recent issues with stress and anxiety, the ALJ noted earlier in his decision that Liapis had not required psychiatric hospitalization or other "intensive" mental health treatment, thus signaling why he viewed Liapis's course of treatment as conservative. R. 28. Given the deference owed to an ALJ's factual determinations, the court declines to second-guess the ALJ's characterization or his conclusion that Liapis's course of treatment was generally inconsistent with Dr. Pushkash's finding of "marked" limitations in concentration and persistence.

### 3. Physical impairments

Finally, Liapis argues that the ALJ erred by focusing on the mental health records to the exclusion of the evidence concerning Liapis's physical impairments. Liapis says that the mental status findings, even if largely benign, aren't even that relevant to Dr. Pushkash's opinion because his opinion was based mostly on the pain generated by Liapis's physical impairments. Dkt. 12, at 16–17; Dkt. 23, at 8. Had the ALJ properly focused on his physical conditions, argues Liapis, he would have found support for Pushkash's opinion in the following: (1) both Pushkash and the other consultative examiner, Dr. Quinn, observed that Liapis appeared to be in pain; (2) Quinn concluded that Liapis's pain limited him to switching between sitting and standing every 10-15 minutes; and (3) the objective medical evidence and Liapis's impairments, including his fused ankle, are consistent with his pain complaints. Dkt. 12, at 17.

In response, the commissioner points out that the ALJ discussed and weighed this evidence in his decision. With respect to Quinn's opinion, the ALJ found it unpersuasive because it was based "almost entirely on the claimant's subjective limitations," which the ALJ found unsupported by the overall records. R. 34. The ALJ also noted that Liapis displayed pain behavior during his consultative evaluations and had problems with gait tasks. R. 30. But the ALJ was not persuaded that Liapis's physical limitations or subjective complaints of pain were totally disabling in light of the objective medical evidence and Liapis's activities, which he found showed better functioning than Liapis alleged. R. 32.

Liapis hasn't challenged any of these findings. Instead, he says that *Chenery* precludes the commissioner from relying on any of this analysis because the ALJ plainly didn't rely on it when he evaluated Dr. Pushkash's opinion. Liapis has a point. Even though the court reads the entirety of an ALJ's decision together, *Zellweger*, 984 F.3d at 5455, there still must be a reason

13

to infer that the reasoning set out in one part of the ALJ's decision refers back to or expands upon his rationale for another. Here, it's illogical to suggest that the ALJ's evaluation of Liapis's physical impairments and associated limitations had anything to do with the ALJ's assessment of Pushkash's opinion, given the ALJ's conclusion that Pushkash lacked the expertise to opine on limitations caused by those impairments.

Even so, the court isn't persuaded that the ALJ's failure to analyze the evidence concerning Liapis's physical impairments in the context of Dr. Pushkash's opinion requires a remand, for two reasons.

First, the ALJ's mistaken belief that Dr. Pushkash was unqualified to offer an opinion about mental limitations resulting from pain doesn't mean that the mental status exams that the ALJ relied on were wholly irrelevant. One would reasonably expect there to be some abnormal findings or observations of concentration or attention deficits throughout the record if Liapis was consistently in as much pain or as anxious as Pushkash seemed to think he was. Importantly, even Pushkash didn't note any major attention or concentration deficits during the interview; he just noticed that Liapis appeared to be in pain.

Second, harmless error is an exception to the *Chenery* doctrine. *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023); *Oechsner v. Kijakazi*, No. 23-C-56, 2023 WL 5487113, at *12 (E.D. Wis. Aug. 24, 2023) (collecting cases). "The exception is available only if the reviewing court can predict with great confidence, based on overwhelming support in the record, that the agency will reinstate its decision." *Id*. Here, it's obvious what the agency would say if the court remanded the case with an instruction to reevaluate Dr. Pushkash's opinion in light of Liapis's pain complaints because the ALJ already said it: Liapis's pain complaints weren't fully consistent with the objective evidence or his reported activities.

14

That's largely why the ALJ found unpersuasive the opinion of Dr. Quinn, who relied on Liapis's subjective complaints in forming that opinion. As noted, Liapis hasn't identified any errors in the ALJ's analysis of his physical impairments, Quinn's opinion, or Liapis's subjective complaints. So this part of the ALJ's decision remains intact. As a result, the court can say with great confidence that on remand, the agency would simply apply that same reasoning and once again reject Dr. Pushkash's opinion, who, like Dr. Quinn, relied largely on Liapis's subjective pain complaints in concluding that Liapis had marked CPP limitations.

A finding of harmless error is appropriate for another reason. Dr. Pushkash opined that Liapis had "marked" limitations in his abilities to concentrate and persist, but even "marked" limitations don't necessarily preclude all work. *See* 12.00F(2)(d) (a marked limitation means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited."). And receiving a certain ranking doesn't entitle a claimant to a specific work limitation. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019); *see also Biafora v. O'Malley*, No. 22-cv-469-jdp, 2024 WL 1327358, *3 (W.D. Wis. Mar. 28, 2024).[4] Liapis proposes no additional work restrictions that the ALJ should have included, nor does he cite evidence that his pain-related concentration and persistence deficits keep him from performing the very narrow set of jobs encompassed by the ALJ's RFC assessment. The ALJ's work restrictions corresponded to those proposed by the state agency physicians, who took

---

[4]In fact, says the commissioner, Dr. Pushkash's report may not have been a "medical opinion" at all under the agency's regulations, which define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform physical and mental demands of work." 20 C.F.R. § 404.1513(a)(2). But the ALJ did not reject Dr. Pushkash's report for this reason, so the court does not consider this argument.

Pushkash's report into account in assessing Liapis's claim. There appear to be no additional evidence-based restrictions that the ALJ could include even if he were to revisit Dr. Pushkash's opinion on remand.

## ORDER

IT IS ORDERED that the decision denying disability benefits to plaintiff Dimitrios Liapis is AFFIRMED. The clerk of court is directed to enter judgment in favor the commissioner and close this case.

Entered September 30, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge